UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

DANA TAYLOR GARCIA et al.,

              Plaintiffs,

    against

JAMBOX, INC. et al.,

             Defendants.

----------------------------------------

**MEMORANDUM AND ORDER**

**14-cv-3504 (MHD)**

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


The parties, having agreed on terms to resolve this lawsuit, now seek our approval of those terms. We have reviewed the Confidential Settlement Agreement and General Release of All Claims ("Agreement") submitted by the parties, and, for the reasons explained below, we deny the parties' application without prejudice.


Plaintiff Dana Taylor Garcia was employed as a studio manager and studio engineer for defendants' audio recording business between January 2012 and July 2013. (Joint Letter Motion for Approval of Agreement of March 19, 2015 ("Joint Letter") 1). Ms. Taylor was compensated at a daily rate when she acted as studio manager and at an hourly rate when working as the studio engineer.

1

(Id.). She alleges that she did not receive overtime premiums at any point, and that for a limited number of weeks during this period of employment she did not receive a minimum wage. (Id.).

On May 15, 2014 plaintiff filed this lawsuit to enforce her rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and various provisions of the New York Labor Law ("NYLL") and New York State Department of Labor regulations (Comp. ¶¶ 76-108), and also asserted claims for breach of contract. (Id. at ¶¶ 109-15). As defendants, she named the employing company, Jambox Inc., and two of its alleged principals, Leroi Evans and Cathy Palmisano. Plaintiff's complaint asserted all of her claims other than breach of contract on behalf of herself and "others similarly situated"; to date, however, she has made no request for class certification or a collective action.

On January 6, 2015 we held a settlement conference in this action, at which time the parties reported that they needed additional discussions to arrive at terms to settle the case. On February 13, 2015 counsel for the parties informed us during a phone conference that they had agreed on settlement terms. Counsel now jointly submit the Agreement and a letter motion requesting that we approve the settlement terms as fair and reasonable. Because the parties wished to keep the terms of this settlement

2

confidential, they have not filed their letter or the Agreement with the Court and instead provided us only with courtesy copies of the documents.

Under the terms of the Agreement, Ms. Garcia would release defendants from her claims for a total of $15,000.00 to be paid in 25 monthly installments of $600.00 each. (Agreement ¶¶ 1, 3). Additionally, plaintiff would be required to hold "entirely confidential" the terms and conditions of the Agreement, and a violation of that provision would trigger forfeiture by plaintiff of all payments made to her. (Id. at ¶ 4). Plaintiff's share of the settlement fund under the Agreement would be $9,750.00, constituting 65 percent of the settlement fund, and her counsel would stand to receive $5,250.00, representing 35 percent of the settlement fund. (Joint Letter 3).

## ANALYSIS OF THE SETTLEMENT AGREEMENT

### A. General Standards

The FLSA strictly limits an employee's ability to waive claims for unpaid wages or overtime because of the inherent disadvantage an employee has in negotiation with an employer, and the trend among courts in this circuit is to scrutinize FLSA settlements.

<u>Camacho v. Ess-A-Bagel, Inc.</u>, 2014 WL 6985633, *1 (S.D.N.Y. Dec. 11, 2014)(citing cases). We do so to ensure that the terms under which the employee has waived his rights under the FLSA are fair and reasonable. <u>Id.</u>; <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

We consider the totality of the circumstances in determining whether the Agreement is fair and reasonable, and are guided by the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

<u>Wolinsky</u>, 900 F. Supp. 2d at 335-36 (internal quotations omitted); <u>accord</u> <u>Camacho</u>, 2014 WL 6985633 at *2. We also scrutinize the Agreement for any factors that may weigh against approval, including:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue

```
to further the development of the law either in general
or in an industry or in a workplace.
```

Id. (internal quotations omitted).

The FLSA and the NYLL grant prevailing plaintiffs their attorney's fees "to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." Aguilera v. Cookie Panache by Between the Bread, Ltd., 2014 WL 2115143, *2 (S.D.N.Y. May 20, 2014)(internal quotations omitted). When an FLSA case reaches settlement prior to trial, the attorney's fees are also subject to the court's approval. Id. (citing 29 U.S.C. § 216(b)). Plaintiffs bear the burden of documenting the reasonableness of the fees. Id. (citing Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011)).

We address the essential terms of the Agreement below.

**B. The Settlement Amount and Litigation Risks**

The parties explain in their letter that, in the course of reviewing defendants' records during discovery, they determined that the total amount of plaintiff's unpaid wages is approximately $15,000.00, rather than the $36,000.00 that plaintiff had

previously estimated was owed to her. (Joint Letter 2).[1] They do
not proffer any calculation of plaintiff's best-case potential
recovery, including liquidated damages under the FLSA or New York
Labor Law. If we assumed arguedo a potential recovery of 100
percent liquidated damages premised on underpayment of only
$15,000.00,[2] plaintiff's recovery of $9,750.00 under the Agreement
would represent 32.5 percent of the best-case recovery she could
expect at trial.

Threatening this potential recovery, the parties explain, are
significant litigation risks facing plaintiff because she has no
documentation of her work hours or compensation received, while
defendants do have records for what they paid her each week. (Id.).
Additionally, there is a dispute between the parties regarding
plaintiff's exact duties and whether she can prevail on her
allegation that she was an employee and not an independent
contractor. (Id. at 3). We also surmise, although the parties do
not explicitly so state, that defendants are interested in avoiding
the further costs of litigation, despite the alleged facts in
support of their position.

---

[1] It bears mention that at our January 2015 settlement conference -- which
followed complete production of documents -- plaintiff continued to represent
that she had been underpaid by more than $30,000.00.
[2] See NYLL § 198 (providing liquidated damages for 25% of actual damages);
29 U.S.C. §§ 216(b), 260 (providing liquidated damages equal to the total amount
of unpaid wages).

Even though the litigation risks are factors weighing in favor of approval, we require some evidence -- e.g., declarations, affidavits or exhibits -- to evaluate the settlement. See Camacho, 2014 WL 6985633 at *3 (rejecting a settlement in part because of the lack of information to support a fairness evaluation)(citing Mamani v. Licetti, 2014 WL 2971050, *2 (S.D.N.Y. July 2, 2014); Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 180 (S.D.N.Y. 2014)). Neither the Agreement nor the joint letter motion provide us with an estimate of the hours worked or the applicable wage at which Ms. Garcia worked for defendants. Moreover, there is no explanation for the inconsistencies between estimates of underpayment made at the settlement conference and now.

Plaintiff's counsel has also not explained in the letter motion why the parties have agreed to a two-year payment plan on what is a relatively modest settlement fund. Neither do we see evidence of any of the standard protections for such a prolonged payout -- notably, confessions of judgment -- to ensure that plaintiff's rights are protected in case of a default by defendants. We note in this respect that the only related term is a provision for a late-payment penalty (Agreement ¶ 2), but it does not meaningfully protect plaintiff in the event of a default.

We would expect that plaintiff's counsel would not agree to such a prolonged payment plan absent credible documentation from defendants demonstrating their inability to pay in any shorter time frame and the reliability of their commitment to pay consistently over two years, but plaintiff offers no representation to us that such information has been received, much less what it says about defendants' financial condition. Counsel are also silent on the rationale for omitting basic protections for plaintiff in the event of a default.

In short, the long payment period and large number of payments, combined with the lack of protections in the case of a default and the lack of documentation regarding plaintiff's unpaid wages and defendants' financial status, leave us unable to determine that this agreement is a fair and reasonable compromise for plaintiff.

**C. The General Release Requirement**

Under the terms of the Agreement, Ms. Garcia would be required to release defendants "from any and all charges, complaints, claims, and liabilities of any kind whatsoever, known or unknown, suspected or unsuspected . . . which Plaintiff at any time has, had or claimed to have against Defendants regarding events that

have occurred as of the Effective Date of this Agreement. . . ."
(Agreement ¶ 3).

This release is not "fair and reasonable" because it encompasses far too broad a range of possible claims. In a recent decision denying a similar settlement agreement, nearly identical language was rejected because it "purport[ed] to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." Camacho, 2014 WL 6985633 at *4.[3] As the court noted in Camacho, while such a wide-ranging release is generally unacceptable, it is "doubly problematic" in the specific context of FLSA claims, in which case "the Court has an obligation to police unequal bargaining power between employees and employer." Id.

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release to transfer to the employee the risk of extinguishing an unknown claim. . . . Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.

---

[3] We note in passing that the same attorney who represented the plaintiff in Camacho is counsel for Ms. Garcia in the present matter.

9

Id. (quoting Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)). Accord, e.g., Lopez v. Nights of Cabiria, LLC, 2015 WL 1455689, *6-7 & nn.68-71 (S.D.N.Y. March 30, 2015); Forauer v. Vermont Country Store, Inc., 2015 WL 225224, *8-9 (D. Vt. Jan. 16, 2015).

Appropriate guidance is found in caselaw involving class settlements, which also require judicial assessment of fairness. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013)(citing Fed. R. Civ. P. 23(e); accord Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005); D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001); City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)). In that context, the Second Circuit, in harmony with other circuits, has held that although "plaintiffs . . . may release claims that were or could have been pled in exchange for settlement relief[,] [p]laintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." Walmart Stores, 396 F.3d at 106. See id. at 107 (summarizing "identical factual predicate" doctrine). Accord, e.g., In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 248 (2d Cir. 2011).

As held in Camacho, the court will not countenance an
employer's use of the FLSA "to erase all liability whatsoever in
exchange for partial payment of wages allegedly required by
statute." 2014 WL 6985633 at *4. The broad-sweeping release found
in the Agreement is inconsistent with the underlying policies of
the FLSA, and we will therefore not approve the Agreement until
the release is sufficiently narrowed to cover only "released
conduct [that] arises out of the 'identical factual predicate' as
the settled conduct." Walmart Stores, 396 F.3d at 107 (quoting TBK
Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir.
1982)).


## D. The Confidentiality Clause


The Agreement requires Ms. Garcia to "keep entirely
confidential and not disclose" any aspects of the agreement "except
as necessary to accountants, her immediate family members, tax
preparer, and attorneys," who must also be advised of and bound by
the confidentiality clause. (Agreement ¶ 4). This confidentiality
requirement is enforced by a liquidated-damages provision that
would have plaintiff forfeit any remaining payments if she breached
its terms. (Agreement ¶ 4(d)). Consistent with these requirements,
the parties further assume that the court will not mention the
pertinent terms even as they seek its formal approval of those

11

terms or else will file its decision and the accompanying application for approval under seal. We will not approve the proposed settlement with a confidentiality clause, at least on the current record, because it contravenes the public policy central to the FLSA.

The request to keep the terms of the settlement confidential conflicts with both the general presumption of public access to "judicial documents" and the policies of the FLSA. Moreover, the parties offer no justification for such secrecy, much less a rationale that would overcome the presumptive right of the public to see the settlement terms.

"The common law right of access attaches presumptively to any 'judicial document,' defined as a document 'relevant to the performance of the judicial function and useful in the judicial process.'" Camacho, 2014 WL 6985633 at *3 (quoting Lugosch v. Pyramid Co. Of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006)). Although settlement agreements are typically not judicial documents in this sense, they become judicial documents in lawsuits in which court review of settlement terms is required, as here. See, e.g., Bravo v. 57th Rest. Assocs. LLC, 2015 WL 1283659, *1 (S.D.N.Y. March 2, 2015)(quoting Wolinsky, 900 F. Supp. 2d at 337). Under these circumstances, the courts have, with much consistency,

held that such settlement agreements are presumptively deemed subject to public access. See, e.g., id. (citing cases). Here the parties offer no justification for confidentiality, other than perhaps the implicit assertion that it should follow from the fact that the Agreement itself states that it is to be kept confidential. That rationale is plainly inadequate to overcome the otherwise applicable presumption. E.g., id. at *2 (citing cases).

Apart from the general presumption of public access, the policies embodied in the FLSA themselves suggest that the court should not approve a confidentiality provision absent compelling justification. As the Camacho Court noted in rejecting a settlement agreement with a similar confidentiality provision, the requirement would have served to undermine the intent of Congress in enacting the FLSA to "ensur[e] that workers receive 'a fair day's pay for a fair day's work.'" 2014 WL 6985633 at *3 (quoting Chao v. Gotham Registry, Inc., 514 F.3d 280, 283 (2d Cir. 2008); 81 Cong. Rec. 4983 (1937)). Shielding FLSA settlement agreements from the public prevents public scrutiny that otherwise attends to judicial documents and contributes to our collective understanding and safeguarding of justice. See id. (citing Joo v. Kitchen Table, Inc., 763 F. Supp. 2d 643, 648 (S.D.N.Y. 2011)); Wolinsky, 900 F. Supp. 2d at 337. In particular, since the FLSA provides for judicial scrutiny of settlement agreements, these cases bear a

13

"private-public character," added atop the general presumption of openness attached to judicial documents, that weighs strongly against any interest that a party may have in keeping the terms of its agreement confidential. See, e.g., Joo, 763 F. Supp. 2d at 645-46 (collecting cases in accord with the rule that FLSA settlements must not be sealed). Moreover, since Congress specifically addressed and limited the channels for FLSA settlements, it is not within our purview to treat such judicially reviewed agreements as if they were private settlements. See id. at 647.

In this case, we note that plaintiff asserted in her complaint that there were other employees of these defendants similarly situated to her. That being presumptively the case, the confidentiality proposed by the parties contravenes an important tenet of the FLSA by thwarting her co-workers from learning of their rights and seeking recompense under the statute. This concern goes to the heart of the so-called "external fairness" of an FLSA settlement agreement -- the protection of workers who otherwise have limited access to courthouse filings and can only "learn about [their] employment rights [] directly or indirectly from a co-worker or outside organization." Lopez, 2015 WL 1455689 at *5. A non-disclosure clause such as the one in the parties' Agreement "prevent[s] workers from using a win to publicize both the

14

wrongdoing of the employer and possibility of success more generally." Id. (internal quotation omitted). It is contrary to the public policy inherent in the FLSA, which is to advance employees' rights, even in the face of "copycat lawsuits or embarrassing inquiries" that employers would rather dodge. Id. (quoting Wolinsky, 900 F. Supp. 2d at 338).

The liquidated-damages provision, which is intended to enforce the confidentiality requirement, also contravenes the principles behind the FLSA. By requiring the employee to pay her employer if she breaches the confidentiality requirement and discusses her settlement with other employees, the liquidated-damages provision "has the insalubrious effect of threatening to penalize an FLSA plaintiff who discusses his or her efforts to enforce statutory rights to fair pay." Id. (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

For the reasons stated, we will not approve a settlement in this case unless it contains no confidentiality requirement or the parties demonstrate a compelling reason for confidentiality.

**E. Attorney's Fees**

Even if the Agreement were not otherwise unacceptable for the reasons discussed above, the parties' application for approval would also be inadequate with regard to counsel's fee request. "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" Lopez, 2015 WL 1455689 at *7 (quoting Wolinsky, 900 F. Supp. 2d at 336); see N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). That requirement extends to parties seeking approval of a settlement that allocates a portion of the proceeds to the attorney. See, e.g., Wolinsky, 900 F. Supp. 2d at 336 (citing 29 U.S.C. § 216(b) and cases).

Here, all we have is the parties' letter stating that plaintiff had a retainer agreement with her counsel for 35 percent of the net proceeds, and that the $5,250.00 that counsel would receive under the Agreement is "less than our firm's loadstar [sic.]." (Joint Letter 3). We have no basis to determine whether counsel's fee is fair and reasonable in this case and therefore reject the Agreement on this ground as well. See, e.g., Lopez, 2015 WL 1455689 at *7; Camacho, 2014 WL 6985633 at *5.

16

**CONCLUSION**

Given the totality of the circumstances surrounding this Agreement, we find it unacceptable and deny the parties' motion to approve it. First, the parties have not documented their assertions regarding what plaintiff might expect to recover if she prevailed at trial. Additionally, several terms of the Agreement are plainly unacceptable because they compromise the rights of both plaintiff and similarly situated employees, and they thwart the public policy goals behind the FLSA. Finally, the request for counsel's fees is wholly inadequate.

Our ruling is without prejudice to the parties' ability to file a new motion and settlement agreement that address the Wolinsky factors (see discussion pp. 4-5 supra) and comport with the requirements for settlement agreements and requests for fees under the FLSA. The parties must file a new motion and settlement agreement by May 22, 2015, or, if they are unable to reach terms by then, a joint pretrial order is to be filed by May 22, 2015, including proposed trial dates between June 15 and July 31, 2015.

Dated: New York, New York
       April 27, 2015


                          SO ORDERED.


                          _____
                          MICHAEL H. DOLINGER
                          UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing Order have been sent today to:

Giustino Cilenti, Esq.
Cilenti & Cooper, P.L.L.C.
708 Third Avenue
6th Flr
New York, NY 10017

Michael K. Chong, Esq.
Law Offices of Michael K. Chong, LLC
300 Hudson Street, Suite 10
Hoboken, NJ 07030